McIlvaine, J.
Upon careful consideration of the pleadings and testimony in this case, we are satisfied that the court below erred in its special finding that the conveyance of the Farrin property to Mrs. Moore, the payments in cash and notes by her husband, Charles L. Moore,, and the agreement by him to pay off' the mortgage debt, were made with the intention and for the purpose of replacing the moneys which he had borrowed from her.
That such finding would be in accordance with inferences naturally arising when a husband conveys property to his wife, after receiving from her moneys or property which in equity and good conscience he should replace, is undoubtedly true; but if the parties to such transaction intended to execute an unqualified gift without discharging the indebtedness, it can not be doubted that the legal effect of the transaction would be according to their intentions. The real intention of the parties must determine the nature of the transaction, whether it be a gift or a payment.
The only evidence in this case bearing upon the intent .and purpose of the transaction, was the testimony of Charles L. Moore himself, who, being called by the defense, testified: “I made the payments on the Farrin property as stated, and that was considered and treated as a gift to her. That was the understanding in the family.” And the testimony of William A. Applegate, from which it appears, ..that after the Farrin property had been conveyed and paid for, to wit, in January, 1867, both Moore and his wile treated her claim against him as still due and wholly unpaid, and at that time other property of the Value of more *479 than $8,000, to wit, the Applegate property, was, at the instance of the husband, with the knowledge and approbation of the wife, conveyed and transferred to her in payment of her claim. This latter transaction alone would stamp the former as a voluntary conveyance under the decision in Starr v. Starr, 1 Ohio, 321, where it was held that a deed, from a debtor to his creditor, there being no other consideration than a pre-existing debt, which was afterward treated by the parties as still due, must be held to be without consideration.
But aside from the testimony tending to show that the Farrin property was intended to be an unqualified gift from Moore to his wife, we find, in the answer of Mrs. Moore, a distinct and positive averment as to the intent and purpose of the parties, as follows: “ When the tract of land firstly in the petition described had been purchased, and the said Charles L. Moore made payments of the purchase money, he, being at the time perfectly solvent, agreed that those payments should be a gift, and not an offset against .his indebtedness to this defendant.” There was no testimony offered by either party tending to disprove this averment, in so far as it related to the intention of the parties, and we think the plaintiff had a right to rely upon the fact as it was stated in the answer; and if any advantage can accrue to him from the fact being as averred in the answer, he should not be deprived of it by reason of the contrary finding by the court below.
The judgment, however, should not be reversed on account of the error in this special finding, unless the plaintiff was prejudiced thereby.
In order to ascertain whether there was such prejudice, we must look into the whole record to see whether the same judgment should have been rendered notwithstanding the intervention of this error.
For the purpose of disposing of this question, we must assume that the conveyance of the Farrin property to Mrs. Moore, and the payments made on account thereof by her husband, were in fact a gift or gifts made by him to her, *480 without any intention of satisfying her claim against him. Now, one theory of the plaintiff’s case was, that at the-time the gift, or gifts, were executed the plaintiff was a creditor of Charles L. Moore, and that he (Moore) was at the time insolvent; and the transactions between Moore and his wife were therefore fraudulent as against the plaintiff.
The testimony set out in the record clearly shows the following facts, to wit: That the plaintiff’s debt was contracted by Charles L. Moore on the 16th of December, 1865 ; that the deed from Farrin to Mrs. Moore was executed on the 19th of October, 1865; that the Farrin property was conveyed to her subject to an outstanding mortgage for $6,220; that the purchase money for the property subject to the mortgage was, at that time, paid by Charles L. Moore, or secured to be paid by his individual notes, and that Charles L. Moore was then solvent; that afterward, in the months of September and November, 1866, Charles L. Moore paid $5,597.19 in full satisfaction of the mortgage-debt. We also- assume that at the time the property was conveyed to his wife, Charles L. Moore promised to pay the mortgage debt at its maturity. The weight of the testimony is that Charles L. Moore was insolvent at the time-lie paid off the mortgage debt; at least there is no testimony showing his solvency at that time.
On this stale of facts, we are of opinion that Mrs. Moore, by the delivery of the deed on the 19th of October, 1865, took, as a gift executed, the equity of redemption in this property, and nothing more. That the promise of h.er husband to pay the mortgage debt at its maturity was-not a gift executed, and did not become such until- the payment was in fact made. That the burden of showing the solvency of Charles L. Moore, at the time he paid the mortgage debt, in order to uphold the gift, as against the plaintiff, who was then a creditor, rested upon the defendants. And as the donee of an insolvent debtor can not be protected against the claims of creditors, it follows that the interest of Mrs. Moore in this property, to the extent that. *481 it accrued to her by reason of the payment of the mortgage-debt, can not, as a mere gift from her husband, be protected against, the claim of the plaintiff.
It appears, however, from the testimony, that at the time-the mortgage debt was paid off by her husband for her benefit, Mrs. Moore was, in equity, a creditor of her husband for money loaned, and to the extent that she was and, continued to be such creditor, we think her equity is superior to that of the plaintiff. Being in possession of the-property, without any actual fraud, and by title absolute as-against her husband, and her equitable right to payment being equal to that of other creditors, she ought not to be-disturbed in her possession without having satisfaction of her claim.
The amount due her at the time of trial is not stated in the testimony, nor is there any data from which it can be ascertained with accuracy. That the original amount was. greater than the amount paid in extinguishment of the-mortgage debt is sufficiently shown. It grew out of two> transactions : 1. Money, to the amount of $2,500 or $2,700,.. received by her husband from her father’s estate, and retained by him as a loan. 2. The value or proceeds of forty-shares of Western Union Telegraph stock, which her husband received from her and converted to his own use, under-circumstances which show an obligation to account. The value, or the sum realized on the sale, is not shown, but the-testimony excludes the conclusion that it was more than. $4,000. These two sums constitute the original indebtedness, but the true inquiry is, how much was due at the time-of trial in the court below.
That a part, if not the whole of her claim, had been discharged by the conveyance to her of the Applegate property, is shown by the uncontradicted testimony of William A. Applegate, who testified, on cross-examination by the defendant, as follows:
“ To pay C. L. Moore what I owed him, I transferred; the property and the Looker note to Mrs. Moore, and Mr.. Moore paid her my mother’s interest in the Looker note. L *482 transferred the property to Lydia C. Moore, at the request of Charles L. Moore. It was my understanding that C. L. Moore was indebted to his wife before this. I knew that Mrs. Lydia C. Moore had had a claim against her husband for some three years before that. It was somewhere between $10,000 and $15,000. I know that the property was conveyed in part payment of that debt. I was present when the arrangement was made, and the conveyance was made for that purpose. The price of the land I conveyed was $14,000. Two-thirds of $18,500 was unpaid, and secured by mortgage on the property. The mortgage was held by Mrs. Nichols, of whom I bought the property, and Mrs. Moore took it subject to this incumbrance.”
The Looker note referred to was for the sum of $3,750. The date of the transaction was January 5, 1867,
The above testimony does not appear to have influenced the court below in its findings of fact. For what reason does not appear. It may be that the court having found that Mrs. Moore’s claim had been extinguished by the conveyance of the Farrin property, the finding of fraud in the Applegate conveyance was a foregone conclusion. But when it is conceded that the Farrin property was an unqualified gift, it can be scarcely doubted that the Apple-gate property was conveyed in payment, or, at least, in part payment, of Mrs. Moore’s claim against her husband. And it is quite clear that, after deducting from her claim the value of the Applegate property, the balance due would be less than the amount paid in discharge of the mortgage on the Farrin property, and for the difference, the plaintiff below was certainly entitled to a decree.
Being of opinion, therefore, that the plaintiff is entitled to a reversal of the judgment as prayed for, to wit, the judgment dismissing his petition in so far as it sought to subject the Farrin property to the payment of his claim, we have concluded, in order that injustice may not be done, to reverse the entire judgment, and remand the whole case for a new trial.